IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Spencer Utsey a/k/a Spencer Clay Utsey,    )    C/A No. 8:13-cv-01433-JMC-JDA
                                           )
        Petitioner,                        )
                                           )
        v.                                 )    **REPORT AND RECOMMENDATION**
                                           )    **OF MAGISTRATE JUDGE**
Michael McCall, Warden of Lee              )
Correctional Institution,                  )
                                           )
        Respondent.                        )
_____        )

This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 35.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28

U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule

73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for

relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on May 23, 2013[1] and filed a

supplement to the Petition on July 22, 2013.  [Docs. 1, 27.]  On September 23, 2013,

Respondent filed a motion for summary judgment and a return and memorandum to the

Petition.  [Docs. 34, 35.]  On September 25, 2013, the Court filed an Order pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary

judgment procedure and of the possible consequences if he failed to adequately respond

to the motion.  [Doc. 37.]  On October 4, 2013, Petitioner filed a response in opposition.

[Doc. 39.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing
date in the light most favorable to Petitioner, this action was filed on May 23, 2013.  [Doc. 1-4 (envelope
stamped as received by the prison mail room on May 23, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Lee Correctional Institution pursuant to orders of commitment of the Bamberg County Clerk of Court. [Doc. 1.] In June 1999, Petitioner was indicted for armed robbery. [Doc. 34-9 at 99–100.] On June 15, 1999, represented by Joshua Koger, Jr. ("Koger"), Petitioner proceeded to a jury trial. [Docs. 34-8 at 1–102, 34-9 at 1–98.] Petitioner was found guilty as indicted. [Doc. 34-9 at 92–93.] On the same day, Petitioner was sentenced to thirty years imprisonment. [Doc. 34-9 at 97.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On September 7, 2000, Aileen P. Clare of the South Carolina Office of Appellate Defense filed a final brief on Petitioner's behalf. [Doc. 34-1.] The brief raised the following issue:

> Was appellant entitled to a directed verdict because the State's evidence did not support the facts alleged in its indictment?

[*Id.* at 4.] On November 20, 2000, the South Carolina Court of Appeals filed an opinion affirming the conviction. [Doc. 34-3 at 3–6.] Petitioner filed a petition for rehearing on December 5, 2000 [*id.* at 7–10], which was denied in an order filed on January 30, 2001 [*id.* at 11].

Petitioner filed a petition for writ of certiorari to the South Carolina Supreme Court on April 2, 2001. [Doc. 34-4.] The State made a return to the petition on April 30, 2001 [Doc. 34-5], and the Supreme Court denied the petition on June 21, 2001 [Doc. 34-6]. Remittitur was issued on June 22, 2001. [Doc. 34-7.]

**PCR Proceedings**

***First PCR Application***

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on April 9, 2002. [Doc. 34-10.] Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

Ground 1

Trial counsel failed to subpoena applicant witnesses.

Supporting Facts 1

Trial counsel failed to subpoena applicants witnesses that applicant requested of counsel to do so. Also counsel failed to take notes so he could recall exactly what the applicant requested of counsel to do.

Ground 2

Trial counsel was ineffective for requesting a break in the middle of him cross examining a witness.

Supporting Facts 2

Trial counsel should have objected because it was in the middle of his cross exam. Counsel requested a break again shortly afterwards. Trial counsel should have brought out the inconsistencies within Lester Dickerson prior statement and pursuant to Rule 613(B) S.C.R.C.P. no further evidence would have entered into evidence of Lester's testimony; but counsel failed to make the motion under Rule 613(b) SCRCP even after Lester Dickerson admitted to the prior statements.

Ground 3

Trial counsel was blatently ineffective at the sentencing phase of applicant's trial when counsel placed applicant's character into evidence.

3

### Supporting Facts [3]

Trial counsel acted as a (2nd) second prosecutor and placed my character into evidence at sentencing when counsel stated "at times our relationship might have been volatile." The comment pertaining to applicant was prejudicial.

Evidence of a criminal defendant's other crimes or bad acts is admissible only to demonstrate motive, intent, identity, existence of a common scheme or plan, or absence of mistake or accident. These rules are based on the policy that character evidence is not admissible to show the defendant has a criminal character or a propensity to commit the charged offense.

### Ground 4

Trial counsel was ineffective in failing to object when the court denied me access to counsel.

### Supporting Facts 4

Trial counsel failed to object when the trial court denied me access to counsel during a critical stage of applicant's trial. The client must seek legal advice from the attorney.

### Ground 5

Trial counsel failed to provide applicant with a comp[l]ete copy of applicant's discovery material.

### Supporting Facts [5]

Trial counsel did not provide applicant with a complete copy of applicant's discovery material pursuant to Rule 5 & 6 SCR. Crim. P. Applicant was deprived due process of law, equal protection, and a complete defense because applicant's discovery wasn't turned over to applicant upon applicant's request.

### Ground 6

Trial counsel ineffective for failing to object to extra police security within the courtroom during my trial.

### Supporting Facts 6

Trial counsel failed to object to extra police security within the court room during applicant's trial deprived the applicant of effective representation pursuant to the Sixth Amendment of the U.S. Constitution. The police officers was making mean faces when I entered the courtroom and sta[]ring at applicant during applicant's trial.

4

### Ground 7

Trial counsel failed to subpoena the principle investigating officer to testify at my trial.

### Supporting Facts 7

Trial counsel failed to subpoena the principle investigating officer to applicant's trial to testify on behalf of the defense.

### Ground 8

Trial counsel failed to object to improper comments made by the solicitor during closing argument.

### Supporting Facts 8

Trial counsel failed to object to improper comments made by the solicitor during his closing argument. The solicitor Mr. Robert M. Madsen put the jury in the allege victim shoes during closing argument on Tr. p. 175, Lines 5–17. The failure of counsel to make a contemporaneous objection was ineffective assistance of counsel, as it fell below the level of reasonable professional assistance and created a reasonable probability that the outcome of applicant's trial would have been different. The failure to object prohibited the Supreme Court from addressing the merits of this issue on appeal.

### Ground 9

Trial counsel was ineffective for failing to quash arrest warrant # F-853064 for lack of probable cause.

### Supporting Facts 9

Applicant avers that counsel was ineffective for failing to file a motion to quash arrest warrant # F-853064 and counsel's failure to make proper pre-emptory challenge to police report/invetigation allowed applicant to be convicted upon non-existent evidence and furthe allowed applicant to be arrested and held in custody upon a complete lack of probable cause. Article One, Section Ten (1) of the S.C. Constitution prohibits private citizens from impeding liberty by unreasonable seizure unless "information" be obtained first which prescribes due process, not last. Arrest warrant were invalid on it's face because prescriber, officer could not swear to or determine probable cause.

## Ground 10

Trial counsel was ineffective for failing to impeach the States witnesses[].

## Supporting Facts 10

Trial counsel had available information to impeach the State's witnesses and failed to do so. Also counsel presented no evidence from applicants Rule 5 discovery that could have changed the outcome of applicant's trial. The witnesses statements and testimony [illegible] counsel at trial can impeach a witness using his prior inconsistent statements, but he must not fail to impeach the witness, if, a failure to do so will result in a denial of his clients due process of law.

## Ground 11

Trial counsel ineffective for failing to make a motion to quash applicant's indictment because the indictment contained nontestimonial evidence.

## Supporting Facts 11

Trial counsel failed to challenge applicant's indictment because the prosecutor presented evidence of jewelry and money being deprived from Lester Dickerson, when in fact none of the prosecutor's witnesses testified to money being deprived from Lester Dickerson. The solicitor presented perjured nontestimonial evidence before the grand jury. The grand jury indicted me because they considered the evidence pertaining to money to be firsthand testimony.

## Ground 12

Trial counsel failed to make a motion before the trial court that the truth of every accusation was not confirmed by the 12 jurors.

## Supporting Facts 12

Applicant's indictment alleged that applicant took jewelry and money from Lester Dickerson. At applicant's trial no witnesses presented by the prosecutor testified to money being taken from Dickerson. Trial counsel allowed me to be convicted and sentenced upon a additional accusation that was not confirmed by the unanimous suffrage of twelve of the [defendants] applicant's equals and neighbors.

6

## Ground 13

Counsel was ineffective at sentencing for failing to advise applicant that he was being sentenced under the 85% law instead of the 16-11-330(A) statu[t]e.

## Supporting Facts 13

Trial counsel failed to advise applicant that he was being sentenced under the 85% law.  It is conclusive that the statu[t]e (which was legislated by S.C. Representative) is explicited, Arm Robbery charge carries a mandatory minimum sentence of (30) thirty years, (7) seven without the possibility of parole.  Trial counsel knew the court was imposing another meaning of the 16-11-330(A) statu[t]e, which is in clear violation of Busby vs. Moore.

## Ground 14

Trial counsel failed to properly cross examine Lester Dickerson when Dickerson open the door to be impeach and his credibility would have been attacked.

## Supporting Facts 14

Trial counsel failed to ask the questions that applicant request of counsel to ask when Lester Lamar Dickerson open the door to be asked the questions. . . . and these pages in the transcript will support my ground because even the trial court stated if the state does anything to open the door the information could come in.

## Ground 15

Trial counsel was ineffective for failing to put forth on the record the discrepancy between the testimony that was testified at the preliminary hearing and the testimony in the reports.

## Supporting Facts 15

Trial counsel failed to put on the record before the trial court that the incident report officer Smoak was reading from stated that Lester Dickerson was walking down Weimer St. And also described the allege crime totally different.  This could have prove a Rule 5 & 6 violation also that the prosecutor was deliberately with-holding material information from applicant. The preliminary hearing tape will prove that the incident report captain Sammie Bamberg wrote is not the original report.

7

### Ground 16
Applicant's indictment was insufficient because the indictment did not put applicant on notice of the possible range of sentencing for the charge and counsel did not challenge the indictment.

### Supporting Facts 16
Trial counsel failed to challenge applicant's indictment when in fact the face and the body of the indictment alleged the 16-11-330(A) statu[t]e. Applicant was sentenced under the 85% law and not under the 16-11-330 statu[t]e.

### Ground 17
Trial counsel failed to quash applicant's indictment, as it did not inform the applicant of a element of the offense charged.

### Supporting Facts 17
Applicant's indictment did not allege (with the intent to permanently deprive the owner of possession of the property. If a fact is an offense element, it must be charged in the indictment and, if the defendant chooses to proceed at trial, it must be proven beyond a reasonable doubt, but, if a fact is a mere sentencing consideration, it need not be raised until sentencing and need to be proven only by a preponderance of the evidence. Implicit in definition of larceny, and hence in the crimes of robbery and armed robbery, is also an intent element, to be guilty of larceny, the accused must intent "to permanently deprive the owner of possession by converting the property to the taker's own use." Because the element intent to deprive the owner permanently of possession of the property taken - were not alleged in the indictment, it failed to apprise the applicant of the nature of the crime with which applicant was charged, and the trial court was without jurisdiction or the offense of armed robbery.

### Ground 18
Trial counsel committed cum[ula]tive errors during applicant's trial.

### Supporting Facts 18
Trial counsel violated applicant's due process, equal protection rights and committed cum[ula]tive errors during applicant's trial.

Ground 19
Trial counsel failed to explore defenses.

Supporting Facts 19
Trial counsel failed to explore defenses and gave applicant misleading advice. Misleading advice through failure to research law after notice of possible defenses amounts to ineffective assistance.

Ground 20
Trial counsel performance during applicants trial prejudiced the applicant.

Supporting Facts 20
The attorney for the applicant was not diligent and counsel deficient performance prejudiced the applicant. Counsels performance requires reversal.

Ground 21
Trial counsel was ineffective when counsel failed to challenge the bill 3096 "truth in sentencing" 85% law.

Supporting Facts 21
Trial counsel failed the challenge the General Assembly violating the single subject clause of S.C. Const. Art. III, § 17 when it enacted bill 3096 "Truth in Sentencing" when it included within one bill unrelated provisions, and § 17-25-45(B) of that act and applicants sentence are unconstitutional, changing the meaning of the 16-11-330(A) statu[t]e and applicant was denied due process of law and effective assistance of counsel in violations of S.C. Const. Art. I, § 3 & 14, and the sixth and fourteenth amendments of the United States Constitution. Trial counsel knew only one subject can be placed in a bill. Bill 3096 clearly violated the one subject clause of Art. III, § 17 of the South Carolina Constitution and is void in its entirety. Furthermore, the provisions of Bill 3096 that deny parole eligibility, earned work credits, and other provisions of law for rehabilitation violates S.C. Const. Art. XII, § 2.

Ground 22
Trial counsel failed to call a recess and prove that Lester Dickerson was not telling the truth about whether or not he seen Judge Gibson the day Lester signed the arrest warrant.

> Supporting Facts [22]
> Trial counsel had in his possession the preliminary hearing tape to prove that Judge Gibson stated he saw Lester Dickerson on the day the arrest warrant was signed.  Lester testified that he didn't go before Judge Gibson to take out a arrest warrant on 12-23-98 but Dickerson stated he went before Judge Singleton.  Also applicant is stating this for the record that the applicant's transcript is inaccurate especially when this part is mention about the arrest warrant being issued.

[Doc. 34-10 at 4–15 (internal citations omitted.]  The State filed a return on June 3, 2002. [Doc. 34-11.]

A hearing was held on January 9, 2003.[2]  [*See* Doc. 34-12 at 1 (order of dismissal, noting that an evidentiary hearing was convened on January 9, 2003).]  On March 3, 2003, the PCR court filed an order of dismissal, noting that Petitioner's PCR counsel informed the PCR court that Petitioner refused to discuss his PCR allegations with counsel and that Petitioner refused to testify at the hearing and no other witnesses were called on Petitioner's behalf.  [*Id.*]  Accordingly, the PCR court dismissed the PCR application with prejudice for failure to prosecute.[3]  [*Id.*]  No appeal was taken from the dismissal of Petitioner's first PCR application.

---

[2]The record before this Court does not include a transcript from the January 9, 2003 hearing. Respondent attempted to obtain a transcript from the hearing but was notified that a transcript is not available. [Doc. 34-53.]

[3]The certificate of service attached to the order of dismissal indicates that the order was not served until January 10, 2006.  [Doc. 34-12 at 3.]

### *Second PCR Application*

Petitioner, proceeding pro se, filed a second PCR application on April 18, 2008. [Doc. 34-13.]  Petitioner stated the following as his ground for relief/supporting facts, quoted substantially verbatim:

> In so far subject never received a order of dismissal from the PCR hearing, Post Conviction Rel[ie]f, also subject aware at point to that the PCR wasn't at a finality nor the question that arouse about a sentencing violation (also subject would request to fully resolve the issues within the PCR #99-GS-05137, subject isn't vested in the law and isn't aware of certain PCR procedures and also would request for appointment of counsel.

[*Id.* at 6.]  The State filed a return and motion to dismiss on January 26, 2009.  [Doc. 34-14.]  On February 1, 2009, the PCR court filed a conditional order of dismissal.  [Doc. 34-16.]  Between October 26, 2009 and March 10, 2010, Petitioner submitted eight filings: arguing that the conditional order of dismissal did not address all of his allegations; that he had been treated at mental health and would like counsel to be appointed; that *State v. Gentry*, 610 S.E.2d 494 (S.C. 2005), should be overruled; that prison conditions at Lee Correctional Institution amounted to cruel and unusual punishment; that he was moving to dismiss for lack of discovery; that a summary judgment motion had been pending for over a year; that the State had 15 days until it was in default on discovery Petitioner had requested; and that he was demanding a transcript from the PCR hearing.  [Docs. 34-17, 34-18, 34-19, 34-20, 34-21, 34-22, 34-23, 34-24.]  On April 12, 2010, the PCR court filed an order denying and dismissing the application with prejudice.  [Doc. 34-25.]

On January 5, 2011, the Clerk of the Supreme Court of South Carolina wrote to Petitioner regarding documents he would need to provide to the Court within twenty days.

[Doc. 34-26.]  On February 1, 2011, the Supreme Court granted Petitioner an extension until March 7, 2011 to provide the documents and explanation requested in the January 5, 2011 letter and informed Petitioner that if he failed to provide the information, the matter would be dismissed.  [Doc. 34-27.]  On March 11, 2011, the Supreme Court dismissed the appeal because Petitioner failed to provide the documents requested in the January 5, 2011 letter.  [Doc. 34-28.]  Petitioner apparently filed a motion to reinstate the appeal,[4] which was denied on April 21, 2011.  [Doc. 34-29.]  Remittitur was issued on April 21, 2011.  [Doc. 34-30.]

### Third PCR Application

Petitioner, proceeding pro se, filed a third PCR application on December 6, 2011.  [Doc. 34-31.]  Petitioner stated the following as his grounds for relief, quoted substantially verbatim:

(a)    Ineffective assistance counsel

(b)    Lack of physical evidence pursuant Rule 5 & 6

(c)    Lack of subject matter jurisdiction

[*Id.* at 4.]  In support of these grounds, Petitioner stated the following facts, quoted substantially verbatim:

(a)    In all aspects

(b)    Lack of bullets, allege weapon, sal[iv]a, blood, fingerprint

(c)    Lack of subject matter jurisdiction over indictment.

---

[4]The record before this Court does not include the motion to reinstate.

[*Id.*]  The State filed a return and motion to dismiss, dated January 20, 2012.  [Doc. 34-32.]
Petitioner submitted an answer to the return.  [Doc. 34-35.]

On February 1, 2012, the PCR court filed a conditional order of dismissal.  [Doc. 34-34.]  Thereafter, Petitioner submitted a thirty-one page filing, including exhibits.  [Doc. 34-36.]  On July 3, 2012, the PCR court filed an order denying and dismissing the application with prejudice.  [Doc. 34-38.]

Petitioner submitted a notice of appeal, which was delivered to the mailroom at Lee Correctional Institution on August 14, 2012.  [Doc. 34-39.]  Subsequently, Petitioner submitted an explanation pursuant to South Carolina Appellate Court Rule 243.  [Doc. 34-40.]  On August 27, 2012, the Supreme Court dismissed the appeal.  [Doc. 34-41.]  Petitioner apparently filed a petition for rehearing,[5] which was denied on September 13, 2012.  [Doc. 34-42.]  Remittitur was issued on September 14, 2012.  [Doc. 34-43.]

### Fourth PCR Application

Petitioner, proceeding pro se, filed a fourth PCR application on November 19, 2012.  [Doc. 34-44.]  Petitioner stated the following as his grounds for relief, quoted substantially verbatim:

(a)     Ineffective assistance of counsel

(b)     Lack of physical evidence pursuant Rule 5 & 6

(c)     Lack of subject matter jurisdiction

(4)     Expert testimony is opinion

(5)     Trial attorney ineffective in all areas

---

[5]The record before this Court does not include the petition for rehearing.

13

(6)    Due process violations/Const. Articles

(7)    Herewith newly discovered evidence Rule 60B or after

(8)    A motion for a direct verdict should of been granted

(9)    The Gentry, 610 S.E.2d 494 is violating all rights state and federal

(10)    Every allegation in indictment wasn't confirm by 12 jurors

(11)    The nature of the offense was changed at trial and at grand jury proceeding in clear violation of Hopkins v. State, 451 S.E.2d 389

(12)    The 85% statu[t]e is not i[m]plemented in the § 16-11-330 title lan[gua]ge

(13)    The Miranda rights were never read to me in violation of Miranda v. Arizona and Wainright, cite as 433 U.S. 72, 97 S.Ct. 2497

(14)    Upon overhearing some folks talking about my case their is foul play by State of S.C. allege[d]ly

(15)    The State of South Carolina used false evidence in case, Rule 404; 403 S.C. R. Crim. P. in violation.

(16)    The grand jury was biased

(17)    The solicitor denied applicant evidence

(18)    Witnesses cant truthfully say applicant was robber

(19)    The state/solicitor failed to report allege offense to SLED

(20)    Pursuant a applicant must be armed to comport the elements of arm robbery

(21)    Pursuant Pruitt all my issues aren't being ruled on

(22)    Cant reduce charge must be return grand jury

14

(23)    A fact must be charged in indictment

(24)    The state have physical evidence

(25)    The indictment defect must still have a law

[*Id.* at 3, 8–18.]  In support of these grounds, Petitioner stated the following facts, quoted substantially verbatim:

(a)    Counsel ineffective in all areas

(b)    Only testimony at trial no Rule 5 & 6 evidence physical

(c)    Must be convicted on each allegation in indictment I had a additional allegation and inter a la I.

(4)    Pursuant Rule 702, 703, 705 a expert is to testify only to evidence.  Physical evidence to match the testimony.

(5)    Failing to subpoena witnesses; failing to object at trial in general; fail to quash indictment; fail to write sled for the evidence, physical to aid the defense; fail to investigate allege crime scene; fail to mention that he never lost a PCR hearing and there is no way except this is pre staged allege[d]ly.  All transcripts mostly $ read states Joshua Koger is a good man - the man has a standard took my case and said he could win and sold me out, failing to present case law, failing to bring U.S. v. Gaudin, 115 S.Ct. 2310 (1995);

(6)    Due process of law is at every stage of proceeding upon laws - Const. U.S. and state argicles.  Also due process of rights of every stage.  Preliminary hearing, trial before after; and upon not being read Miranda right and not serve with the allege search warrant, not being served with all statements of witnesses.

(7)    Herewith newly discovered evidence that Lester Lamar Dickerson wrote two statements or probably more another statement was written for him to be release from jail on a drug charge and that wasn't given to me, applicant.  The statement was to George Folk, George Morris and maybe Captain Bamberg.

15

(8)  No physical evidence put forth at trial only eternal inconsistent statements and no weapon present to complete the 16-11-330(a) stat[t]e State v. Mitchell, 535 S.E.2d 126 (2002); Jackson v. Virginia, 99 S.Ct. 2781 (1979); Criminal Law Key 763 (18)

(9)  This is a motion or evidentiary hearing to set forth that Gentry supra is only state law and the federal government standards are still same and this matter needs to be address in federal court.  Gentry is a illegal caselaw.

(10)  The solicitor charged me in indictment with taking jewelry and money at trial solicitor Robert M. Madson moved to strike the money from indictment See U.S. v. Gaudin, 115 S.Ct. 2310 (1995)

(12)  The 85% truth in sentencing - Bill 3096 isnt impl[e]mented in the 16-11-330(a) - title; lan[g]uage. Changing meaning of statu[t]e.  Busby v. Moore, 498 S.E.2d 883; unconstitutional sentence under § 17-27-10 to 160 see statu[t]e § 16-11-330(a).

(13)  Miranda rights violated werent read to applicant in clear violation of Miranda, 433 U.S. 72.

(14)  Upon overhearing some folks talk about applicants case on 8-28-12 their is foul play and some hidding illegal actions by state allege[d]ly and not disclosing the truth nor real discovery.    Newly discovered or after discovered pursuant to Post Conviction Procedure Act, S.C. Code Ann § 17-27-10 to 160

(15)  The state of S.C. used false evidence in case and in grand jury / and also false information § 23-31-160 and irrelevant evidence and inadmissable in clear violation of rules above.  Making allege facts into existence less probable than it would if the evidence wasn't existing and in indictment.

(16)  The grand jury was biased upon they found me true bill indictments upon jewelry and money and discrimination upon Hispanic, Mexicans, Whites, Article 1 § 18 S.C. Const. - 17-17-10 - when Hispanics-Mexicans and other races are minority in the United States by 38.8 <u>million</u>

16

now with 2/3 two thirds of which are Mexicans, and 9% Puerto Ricans and 4% Cubans. By the state acts at the grand jury's and trial panels level, <u>tainted the indictment</u> of applicant and everyone indicted by that panel. Thereby the indictment is judicially defective & void by law because it was gotten in a racial discrimination manner by excluding above races was a due process violations and must abide by equal protection laws clause and 14th Amend the Const. Courts and system to comply with the U.S. Const. and Hurtado v. California, 110 U.S. 516.

(17)   The solicitor denied applicant evidence, documents, statements, didn't test allege gun/crime scene, hands, evidences allege[d]ly; no complete investigation report, cover up stories allege[d]ly, and denied me due process of law in violation of Article 1 & 3 of Const.

(18)   Witnesses can't truthfully say I was robber see State v. Williams, 223 S.E. 2d 38. Also extra elements, and not enough elements to allege crime to convict relevancy/irrelevancy Rule 403, 404 evidence rules - jewelry/money/testimony/open closing arguments/trial arguments/case/grand jury proceeding/arrest warrant. All testimony irrelevant to procure a fact that isn't in existence of allege crime already.

(19)   The state of S.C./South Carolina Law Enforcement Division failed to report allege offense. Solicitor failed to report offense. SLED I wrote SLED and of case on files 14-17

(20)   A applicant/person must be armed at the time of robbery and testimony will not suffice the fact of a person is armed; only recovery of the actual robbery allege weapon, only South Carolina is still using these laws - even upon the O.J. trial Shapiro and Cockran got the glove to say it was to small it doesn't fit must aquit. Other states use physical evidence - Im opting for this argument to set a presidence, in South Carolina.

(21)   Pursuant Pruitt v. State, 423 S.E.2d 127 (1997); Plyler v. State, 424 S.E.2d 477 (1992) all my issues arent being ruled on that I, applicant raised in PCR application.

17

(22)   Cant reduce a charge thats in a true bill indictment must be return to grand jury, due process violations; 14th Amend; Gilstrap v. State, 252 S.C. 625.

(23)   A fact must be charged in indictment that I, applicant was allege[d]ly armed with a 22 or 38 caliber gun, also time of crime; also the amount taken; and also the jewelry in detail.  See U.S. v. Davis, 184 F.3d 366 (4th Cir. 1999)

(24)   The state must have physical evidence.  See Valarde-Gomez, 269 F.3d 1023

(25)   If the indictment is defective and the court still has jurisdiction, what is the law if the indictment is defective or does not obtain the necessary elements, because this is still a illegal violation a defective indictment, even if it can't be raised at any time.
        A defect is a main violation in the indictment and Gentry overides a defect in indictment there must be a law to govern defects in indictments or missing elements in indictments.

[*Id.*]  The State filed its return and motion to dismiss, dated February 21, 2013.  [Doc. 34-45.]

On March 4, 2013, the PCR court filed a conditional order of dismissal.  [Doc. 34-47.]  Thereafter, Petitioner submitted multiple filings.  [Docs. 34-48, 34-49.]  On August 27, 2013, the PCR court filed an order denying and dismissing the application with prejudice.  [Doc. 34-51.]  As of September 23, 2013, no appeal had been filed.

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on May 23, 2013.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:**     The court is construing Article III incorrectly

18

*Supporting facts*:      Article III of Constitution of United States, federal district courts, such as United States District Court for District of South Carolina have jurisdiction over cases and controversies of the states and militia; warfare; out of state in state cases and not state courts - the state court is citing Article III as to subject matter jurisdiction and Gentry, 611 S.E.2d 494.

**GROUND TWO:**      The law is being violated.

*Supporting facts*:      Upon a visit from Tricia Blanchett attorney at law she advised me Judge Early III is signing off on my PCR final/conditional orders to post conviction relief application and this is unlawful.

**GROUND THREE:**   Article III is not same as Article I & II

*Supporting facts*:      Article III of Constitution isnt conferring to subject matter jurisdiction of court to hear a case in state court it relates to federal court jurisdiction to hear controversies or cases under laws and treaties of U.S.

**GROUND FOUR:**      Article III meaning

*Supporting facts*:      Article III.  A federal court that, deriving its jurisdiction from U.S. Const. Art. III § 2, hears cases arising under the Constitution and the laws and treaties of the United States is a party, and cases between citizens of different states.   Also termed constitutional court. Article I Court./[cases]: federal courts criminal law key.

[Doc. 1.]  On July 22, 2013, Petitioner filed a supplement to the Petition, asserting that he has an after-discovered evidence claim regarding the subject matter jurisdiction of the trial court.  [Doc. 27.]  As stated, on September 23, 2013, Respondent filed a motion for summary judgment.  [Doc. 35.]   On October 4, 2013, Petitioner filed a response in opposition.  [Doc. 39.]  Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

21

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or

23

> (B)  (I) there is an absence of available State corrective process; or
>
>  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C.

24

Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.   S.C. R. Civ. P. 59(e).   Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.   *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6]   Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.   For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.   S.C. App. Ct. R. 203(b)(2), (d)(1)(B).   A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.   S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.   *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).   Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and

actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).  However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a post conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)).  In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit.  *Id.* at 417.  Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition.  *Holland v. Florida*, --- U.S. ---, ---, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).  Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied.  *Id.* at 2563.

## DISCUSSION

Respondent argues the Petition is time barred.  [Doc. 34.]  Upon review, the Court agrees that the Petition is untimely and Petitioner is not entitled to equitable tolling.

29

**Expiration of Limitations Period**

The South Carolina Supreme Court issued remittitur in Petitioner's direct appeal on June 22, 2001. [Doc. 34-7.] Consequently, Petitioner had one year from September 20, 2001, ninety days after remittitur was issued in his direct appeal, to file a federal habeas petition. 28 U.S.C. § 2244(d)(1); *Holland*, 130 S.Ct. at 2558; *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).

Petitioner filed his first PCR application on April 9, 2002 [Doc. 34-10], such that 201 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and Respondent concedes the statute of limitations was tolled during the period the PCR application was pending—from April 9, 2002 until April 2, 2003, when time expired for Petitioner to seek review of the dismissal of his PCR application [*see* Doc. 34-12 (order of dismissal, filed March 3, 2003)]; S.C. App. Ct. R. 243(d) ("In the same manner and under the same time limitations as provided for appeals from the Court of Common Pleas in Rules 203 and 207, the petitioner shall serve and file a notice of appeal and shall obtain from the court reporter a transcript of the proceedings in the lower court."); S.C. App. Ct. R. 203(b)(1) ("A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment.").

30

Therefore, the one-year limitations period began to run again on April 2, 2003 and expired 164 days later on September 15, 2003.[7]

Petitioner filed his second PCR application on April 18, 2008 [Doc. 34-13], well after the AEDPA limitations period expired.  Further, the PCR court determined the second PCR application was untimely and successive.  [Doc. 34-25.]  Petitioner filed a third PCR application on December 6, 2011 [Doc. 34-31], also outside of the limitations period, which the PCR court denied as untimely and successive [Doc. 34-38].  Petitioner filed a fourth PCR application on November 19, 2012 [Doc. 34-44], also outside of the limitations period, which the PCR court denied as untimely and successive [Doc. 34-51].  Therefore, because the second, third, and fourth PCR applications were filed outside the AEDPA limitations period and the South Carolina courts determined these applications were not properly filed, Petitioner's second, third, and fourth PCR applications did not additionally toll the one-year AEDPA limitations period.  As a result, the Petition—filed on May 23, 2013, over nine years after the expiration of the limitations period—is time barred.[8]

---

[7]Pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, when calculating time, the last day of the period must be included, "but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Because the one-year limitations period expired on Saturday, September 13, 2003, the limitations period expired on Monday, September 15, 2003.

[8]In this case, as previously noted, the certificate of service attached to the order of dismissal in Petitioner's first PCR application indicates that the order was not served on PCR counsel until January 10, 2006.  [Doc. 34-12 at 3.]  Even if the Court assumes Petitioner did not receive notice of the order of dismissal until January 10, 2006, the Petition remains time barred because the statute of limitations would have been tolled during the period the PCR application was pending—from April 9, 2002 until February 9, 2006, when time would have expired for Petitioner to seek review of the dismissal of his PCR application based on the service date of January 10, 2006.  Therefore, the one-year limitations period would have begun to run again on February 9, 2006 and would have expired 164 days later on July 24, 2006 because July 23, 2006 was a Sunday, and this Petition, filed almost seven years later, is time barred.

**Equitable Tolling**

In his Petition and response in opposition to the motion for summary judgment,

Petitioner has failed to specifically address why his Petition was filed over nine years after

the time expired for Petitioner to file a federal habeas petition.  For the reasons explained

below, Petitioner is not entitled to equitable tolling.

As the United States Supreme Court has recognized:

> Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955 (1880)). . . . Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725, 80 L. Ed.2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted).  The

Fourth Circuit has underscored the very limited circumstances in cases subject to the

AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only

entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his

control or external to his own conduct, (3) that prevented him from filing on time." *Rouse

v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).  Thus, rarely will circumstances

warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).[9]   The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted).  Further, as previously stated, the Supreme Court has held that, in addition to demonstrating extraordinary circumstances prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

---

[9]Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly. *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period."); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect." (citation omitted)).

Here, Petitioner has failed to demonstrate that extraordinary circumstances beyond his control or external to his own conduct prevented him from filing his Petition within the statute of limitations. Instead, Petitioner appears to argue that the limitations period began to run in 2012 or 2013 [Doc. 1 at 13]; however, as discussed above, the limitations period began to run either in 2003 or 2006, depending on whether the Court uses the date the PCR court filed the order of dismissal in Petitioner's first PCR application, March 3, 2003, or the date the order of dismissal was served on PCR counsel, January 10, 2006. Using either of these dates, the Petition in this case is time barred, and Petitioner has failed to demonstrate that extraordinary circumstances beyond his control prevented him from filing the Petition within the statute of limitations. Therefore, the Court determines the Petition should be dismissed as time barred.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 18, 2014
Greenville, South Carolina

34